**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BONNIE THOMPSON,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 15-249 (JEB)** |
| **VETERANS CANTEEN SERVICE,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Two weeks after starting her job as a food-service associate at the Veterans Canteen Service, *pro se* Plaintiff Bonnie Thompson was fired.  She has sued, claiming that the VCS's employment action constitutes unlawful age and sex discrimination.  As the undisputed evidence instead demonstrates that a rude interaction with a patron precipitated her termination, the Court will grant Defendant's Motion for Summary Judgment.

## I.    Background

Although the facts here are quite simple, the procedural history is somewhat involved. Thompson initially filed suit in this court on December 4, 2013.  See ECF No. 1 (Complaint). Her very abbreviated Complaint alleged that she had been terminated "as a food service associate" at the Veterans Canteen Service on July 25, 2012.  See id. at 1.  She claimed that she "was discriminated against based upon my gender in violation of the Civil Rights Act of 1964, as amended.  [¶] Moreover, I believe that I was discriminated against based upon my age 57, in violation of the age discrimination in Employment Act of 1967 as amended."  Id.

After setting out these legal bases, the remainder of the Complaint alleges, in its entirety:

> I was having breakfast prior to my shift and there was another person having breakfast in the room, shortly afterwards another person came in and sat next to me.  He got up from his seat picked up the TV remote and asked the other person whom was a male, "Hay Man" are you watching this".  The person didn't respond verbally so the person who came in last rudely changed the channel  At that time, I said to him Sir there is such a thing as mannerism, you could have asked both of us, he stated it doesn't matter you're out numbered anyway
>
> At that time I left the room, I was approached by Rodney Guiles (Cafeterial Supervisor) who indicated he wanted to speak with me  I waited for Mr. Guiles approximately 15 minutes before he called me into his office, at that time Mr. Guiles asked another Supervisor name Pat to come into the office to listen to my statement, along with Chief Manager Gavin Moore  After giving my statement Mr. Guiles ask me to sit in the cafeteria while he call the other person, when I was recalled back into his office Mr. Guiles stated he had to terminate my employment even though my shift had not begun  At that time I asked Mr. Guiles for a reason and a letter of termination which he refused  I can only conclude that Mr. Guiles treated me differently than the other people involved in the incident which were males.  I feel Mr. Guiles is bias against older workers which are females [*sic*]

Id.

Defendant's Statement of Undisputed Material Facts (SUMF) accompanying its Motion largely confirms this account and add a few additional facts – all from Thompson's own deposition testimony.  See Mot., Exhs. A & B (extracts from Plaintiff's deposition).  She had been working at the cafeteria for only two weeks at the time of the incident.  See Def.'s SUMF, ¶ 4.  On that day, while wearing her uniform, she was seated in the cafeteria eating breakfast before her shift began.  See id., ¶¶ 5-7.  A dispute occurred over television channels, leading Thompson to make the comment she alleges in her Complaint.  See id., ¶¶ 10-15.  Her supervisor then terminated her for this interaction.  See id., ¶¶ 24-25.

The case was initially transferred at the end of 2013 to the Eastern District of Missouri, where the VCS is headquartered.  <u>See</u> ECF No. 3 (Transfer Order).  On February 6, 2014, Thompson filed an Amended Complaint, using a form apparently provided by the court there. She checked a space indicating her suit was brought under Title VII, but she did not check the space next to "Age Discrimination in Employment Act of 1967."  Am. Compl. at 1.  This document elsewhere indicates that she believed she was discriminated against based on gender and possibly age.  <u>See id.</u> at 5.  In the narrative, she stated that she did not "feel that the incident was properly and adequately investigated between the customer and myself.  Also I received bias treatment due to the fact I'm a woman and at that time, I was the only woman in the room."  <u>Id.</u> To give Thompson the benefit of the doubt, the Court will treat this Amended Complaint as supplementing, not superseding, her original Complaint.

After Defendant answered, <u>see</u> ECF No. 12, Plaintiff successfully moved for venue to be returned to Washington.  <u>See</u> ECF Nos. 20 (Motion); 21 (Order transferring case based on convenience of parties, convenience of witnesses, and interests of justice).  This Court thereupon held an initial scheduling conference on April 1, 2015, and the parties engaged in discovery through October 1, 2015.  <u>See</u> ECF No. 24 (Scheduling Order).  The VCS has now moved for summary judgment.

## II.      Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor.  See Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

In light of this requirement, and pursuant to Local Civil Rule 7(h) and Federal Rule 56(c), the Court, in resolving summary-judgment motions, "assume[s] that facts identified by the moving party in the statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 7(h)(1).  Plaintiff here

4

submits neither a separate statement nor any record evidence whatsoever.  The Court, consequently, will credit the VCS's evidence, which, in any event, consists only of Thompson's own testimony.

## III.   Analysis

Title VII makes it "an unlawful employment practice . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The ADEA, similarly, prevents an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Individuals 40 years of age and older are included in the protected class.  Id., § 631(a).  Because Thompson was concededly "discharge[d]," the sole inquiry here is whether she was terminated "because of" her sex or age. Id., §§ 623(a)(1), 631(a).

Claims of sex and age discrimination ordinarily proceed in three steps.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Kersey v. Washington Metr. Transit Auth., 586 F.3d 13, 16-17 (D.C. Cir. 2009).  First, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination.  See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Kersey, 586 F.3d at 17.  To pass that hurdle, a plaintiff need only show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (quoting George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005)).  Next, the defendant typically rebuts that *prima facie* showing with evidence of "a legitimate, nondiscriminatory reason" for its actions.  Reeves v. Sanderson Plumbing Prods, Inc.,

530 U.S. 133, 142 (2000).  Finally, if the defendant has produced such evidence, then the

plaintiff must show that "the legitimate reasons offered by the defendant were not its true

reasons, but were a pretext for discrimination." Id. at 143 (internal quotation marks omitted).  In

other words, the plaintiff must prove "that the employer's asserted non-discriminatory reason

was not the actual reason and that the employer intentionally discriminated against the

employee." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

At the summary-judgment stage, however, the inquiry typically collapses into one simple

question: Given all the evidence, could a reasonable jury conclude that "the defendant

intentionally discriminated against the plaintiff"? Id. (internal quotation marks omitted).  Once

an employer has offered legitimate, non-discriminatory reasons for firing the plaintiff, "the *prima*

*facie* case" becomes "a largely unnecessary sideshow." Id. (italics added).  After all, a jury

would be permitted to consider all the evidence on both sides of the scale – not only the

defendant's explanation of the firing and whatever evidence formed the plaintiff's *prima facie*

case, but also any other facts tending to demonstrate animus.  The relevant inquiry at the

summary-judgment stage, as always, is simply whether the facts, viewed in the light most

favorable to the plaintiff, would permit a reasonable jury to find in her favor.

According to Plaintiff herself, she was terminated for her comment to the cafeteria

customer.  While her actions hardly seem to amount to a firing offense, that is not the question

here.  Her assertion in her Opposition that the VCS "acted irrationally and hastily firing me

without any investigation," Opp. at 2, is similarly beside the point.  The only issue is whether the

VCS acted because of Plaintiff's age or sex.  See Fischbach v. D.C.  Dep't of Corrections, 86

F.3d 1180, 1183 (D.C. Cir. 1996) (court "may not second-guess an employer's personnel

decision absent demonstrably discriminatory motive").   All Thompson can muster on that point

is her allegation in the Complaint that "I can only conclude that Mr. Guiles treated me differently than the other people involved in the incident which were males."  Compl. at 2; <u>see also</u> Am. Compl. at 5 ("I received bias treatment due to the fact I'm a woman and at that time, I was the only woman in the room.").  Assuming Plaintiff is trying to claim that she was treated differently from her purported male comparators, she has neither alleged nor established that either of the men involved was even a VCS employee.  <u>See</u> Exh. A at 33-34 (seated man "wasn't an employee of the Veterans Canteen Service"); <u>id.</u> at 37 ("don't know" if other man "was a Vet").  As a result, they cannot serve as comparators who were conceivably treated more favorably than Plaintiff.

In her Opposition, Plaintiff now asserts that she was also "wrongfully dismiss[ed] for exercising my First Amendment Constitutional Rights to freedom of speech while off duty as well."  Opp. at 1.  As a preliminary matter, she never mentioned this rationale in any of her prior pleadings.  Even if the Court could now consider such a claim as an amendment to her Complaint, a public employee's speech is protected only where she "spoke as a citizen on a matter of public concern."  <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006).  Sniping about television etiquette does not qualify.

## IV.  Conclusion

The Court, accordingly, concludes that the VCS is entitled to summary judgment and will this day issue a contemporaneous Order to that effect.


<u>/s/ *James E. Boasberg*</u>
JAMES E. BOASBERG
United States District Judge

Date:  <u>January 12, 2016</u>